THE JAMES H. RICE COMPANY, Appellee, *vs.* JOSEPH Mc-JOHN *et al.*—(MICHAEL J. AGNEW, Admr., Appellant.)

*Opinion filed February 16, 1910—Rehearing denied April 6, 1910.*

1. CREDITORS' BILLS—*when bill is one in aid of execution and not a creditor's bill.* A bill by a judgment creditor, the only purpose of which is to set aside an alleged fraudulent conveyance so that execution may be levied, is a bill in aid of an execution, and is not a creditor's bill in a strict sense.

2. SAME—*distinction between relief to be granted under bill in aid of execution and a creditor's bill.* Under a bill in aid of an execution the only relief which can be granted is to set aside the encumbrance or conveyance alleged to be fraudulent, while under a creditor's bill any equitable estate of defendant may be reached.

3. RECEIVERS—*when appointment of receiver for the rents and profits is erroneous.* Where the only issues raised by a bill in aid of an execution are that the deed sought to be set aside is without consideration and that it is fraudulent as to the complainant, it is erroneous for the court to appoint a receiver for the rents and profits of the real estate involved, particularly without any hearing or any showing in support of the motion for such appointment and without any bond by complainant.

4. SAME—*when defendant is entitled to notice of application for appointment of receiver although in default.* Where the appointment of a receiver is merely incidental to the main object of the bill, the defendant, though he is in default, is entitled to notice of the application for such appointment unless the complainant gives the required bond.

5. SAME—*when rent collected by receiver cannot be applied on complainant's judgment.* The doctrine that a court of equity will take no step to save harmless a party detected in a fraudulent transaction to cheat, does not authorize the application, upon the complainant's judgment, of rents and profits collected by a receiver improperly appointed under a bill in aid of the execution, which prayed no relief and made no issue as to such rents and profits but sought only to set aside the deed to the property involved as being in fraud of complainant's rights as a creditor.

6. SAME—*the complainant should pay costs and expenses if receiver was improperly appointed.* Where the appointment of a receiver at the instance of the complainant in a bill in chancery is improper, complainant should be required to pay the costs incurred by such appointment and the fees and expenses of the receiver.

7. JUDGMENTS AND DECREES—*extent to which decree pro con-fesso is conclusive.* A decree *pro confesso* concludes a defendant as to all matters of fact averred in the bill, but he may, on appeal, contest the sufficiency of the bill or assign as error that its averments do not justify the decree.

8. SAME—*a decree must correspond with the averments of the bill.* In a chancery case no facts are properly in issue unless alleged in the bill, and no relief can be granted by the decree as to matters not alleged.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. FARLIN Q. BALL, Judge, presiding.

On October 6, 1902, the James H. Rice Company, a corporation, filed its bill of complaint in the superior court of Cook county against Joseph McJohn and Edward McJohn, charging that on September 17, 1902, complainant recovered a judgment against said Joseph McJohn in the circuit court of Cook county for $1801.60; that prior to the rendition of the said judgment Joseph McJohn was the owner of certain real estate in Cook county, which was improved by a three-story brick building; that on September 20, 1902, an execution was issued upon said judgment and delivered to the sheriff of said county; that on August 7, 1902, prior to the rendition of the judgment but after the indebtedness upon which it was rendered had accrued, Joseph McJohn conveyed the said real estate to Edward McJohn for a pretended consideration of one dollar; that said conveyance was a mere sham and was made with intent to defraud complainant and other creditors of Joseph McJohn out of their just demands; that no consideration was paid by Edward McJohn therefor, and that the premises are now held by Edward McJohn in trust for Joseph McJohn and for the purpose of preventing a levy and sale of the premises under said execution; that Joseph McJohn has no personal or real estate liable to levy

and sale, except the premises aforesaid, on which the sheriff could levy and realize said judgment; that the sheriff has frequently requested Joseph McJohn to pay said judgment or to turn out property upon which he could levy, but Joseph McJohn has refused to do so. The bill made Joseph McJohn and Edward McJohn defendants, and prayed that they might be required to answer and state the facts and circumstances attending the said conveyance, the amount paid thereon by Edward McJohn and the purpose of the conveyance; that upon a hearing the said conveyance and deed be set aside and declared null and void; that a receiver be appointed, with the usual powers and duties of a receiver; that the sheriff be directed to proceed to levy upon and sell the premises for the satisfaction of complainant's judgment, and for such other and further relief as equity may require.

Summons commanding the defendants to appear at the November term, 1902, of the superior court was duly issued and served. No further proceedings were had in the cause until March 2, 1904, on which date the complainant, by leave of court, filed an amendment to the bill making new parties defendant, charging fraudulent transfers of personal property by Joseph McJohn to the new defendants, and asking to have the same set aside and such personal property subjected to said execution. The defendants Joseph McJohn and Edward McJohn having failed to appear, on April 25, 1904, the court entered default and an order *pro confesso* against them, and referred the cause to the master in chancery to take the proofs and report the same, together with his conclusions as to the law and facts in the case, to the court. Thereafter, on January 31, 1905, on motion of the complainant, without notice to either of the McJohns, without a hearing and without requiring any bond of complainant, the court appointed a receiver "of estate and property, real and personal, things in action, debts, equitable interests and other effects of the defend-

ant *Jacob* McJohn, and also of the real estate mentioned and described in the complainant's bill," and the "rents, issues, income and profits thereof, with the usual powers and duties of a receiver," upon the receiver executing and filing with the clerk a bond in the usual form, in the penal sum of $1000, with sureties. Thereupon the receiver filed his bond in the penal sum of $1000 and took charge of said real estate and collected the rents therefrom up to October 1, 1906, when the court entered an order, upon the petition of one Samuel Schweitzer, finding that said Schweitzer had, since the commencement of this suit, purchased the premises in question at foreclosure sale and had on said last, mentioned date received a master's deed therefor, and directing the receiver to surrender possession of the premises to Schweitzer.

On January 27, 1906, the defendant Edward McJohn died, and thereafter, on June 15, 1906, his death being suggested, the court entered an order substituting in his stead as defendants his heirs and devisees and Michael J. Agnew, administrator with the will annexed of the estate of Edward McJohn, deceased, and ordering summons issued against them. On September 21, 1906, Agnew, as administrator, filed his answer to the amended bill, setting up facts which, if true, constituted a bar to the relief sought by the bill, which answer was subsequently, on December 14, 1906, withdrawn by Agnew, administrator, by leave of court, after exceptions thereto had been filed by the complainant. On November 12, 1906, the administrator filed his motion to discharge the receiver and to vacate, annul and set aside the order of his appointment, the hearing upon which was postponed. On November 30, 1906, the complainant filed another amendment to the bill, setting up the death and heirship of Edward McJohn and the appointment of Agnew as administrator, and praying that said suit and proceedings stand revived against the

substituted defendants in same estate and condition as the same was previous to the death of Edward McJohn.

On December 15, 1906, Agnew, as administrator, filed a written motion to set aside the order of default entered against Edward McJohn on April 25, 1904, and to permit said administrator to present his defense to the bill, setting up the grounds relied upon in support of said motion and accompanying it by his affidavit. Thereupon the complainant, by cross-motion, asked leave to withdraw the amendments of March 2, 1904, and November 30, 1906, and to dismiss as to the parties made defendants by the first of said amendments, which cross-motion was allowed, and the motion of Agnew, administrator, to set aside the order of default and to present his defense was denied. Agnew then renewed his motion upon the same grounds stated in his former motion, and assigned as an additional reason for granting the same that the withdrawal of the amendments amounted to an amendment of the bill as amended. This motion was also denied. The administrator then asked leave to file his answer instanter, submitting the answer with his motion, but the court refused to grant such leave or to permit the answer to be filed.

On April 17, 1907, the administrator, by leave of court, filed his petition for an order directing the receiver to pay over to him all moneys received as rents from the premises in question from the time of his appointment as receiver up to the time of the death of Edward McJohn, amounting to $1100, and adjudging the appointment of the receiver to have been improperly and improvidently made and the order thereof illegal, invalid and insufficient. The complainant and the receiver answered the petition, denying that the appointment of the receiver was illegal, informal or improper, and said administrator filed replications to the answers. The hearing upon this petition was postponed until the filing of the master's report. The master filed his report on July 3, 1907, showing that the

solicitor for the complainant offered certain evidence before him on July 12, 1905, and that no one at that time appeared for the defendants; that subsequently, on March 20, 1907, and on divers days thereafter, he was attended at his office by the solicitor for the complainant and by the solicitor for Agnew, administrator; that on April 12, 1907, the solicitor for the administrator moved to strike out certain evidence offered on behalf of the complainant and asked leave to recall witnesses examined by the complainant on July 12, 1905, for the purpose of cross-examination, but that said motion and leave were denied. The master found that the complainant had produced sufficient evidence to entitle it to the relief sought by the bill and recommended a decree in accordance with the prayer of the bill. The administrator filed objections to the master's report, which were overruled. Upon the filing of the report it was ordered that the objections stand as exceptions to the report. On November 26, 1907, the receiver filed his final report, showing gross receipts amounting to $1680.49 and disbursements amounting to $97.04, to which the administrator filed exceptions.

On December 17, 1907, the court entered a decree overruling the exceptions to the master's report and approving the same; finding the facts according to the averments of the original bill; adjudging the deed from Joseph McJohn to Edward McJohn fraudulent and null and void as to the complainant and ordering the same set aside as to complainant; directing the receiver to pay the moneys collected as rent from the premises in question, after deducting $75 allowed for his services, to the complainant to apply on its said judgment; denying the prayer of the petition filed by Agnew, administrator, on April 17, 1907, and dismissing said petition for want of equity; also denying the motion made by appellant on November 12, 1906, to discharge the receiver and to vacate, annul and set aside the order of his appointment upon the grounds that the receiver was

improvidently and illegally appointed and that the court therein exceeded its jurisdiction. Michael J. Agnew, as administrator, alone appealed from that decree to the Appellate Court for the First District, where the decree was affirmed. He has prosecuted a further appeal to ,this court, and contends that the judgment of the Appellate Court and the decree of the superior court should be reversed and the cause remanded to the superior court, with direction to award that portion of the rents collected by the receiver during the lifetime of Edward McJohn to him, as such administrator.

THOMAS J. O'HARE, for appellant.

ALDEN, LATHAM & YOUNG, for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

This was a bill in aid of an execution, and was not, in its strict sense, a creditor's bill whereby the creditor seeks to satisfy his judgment out of some equitable estate of the defendant which is not liable to levy and sale under an execution at law. The only purpose of this bill was to remove a fraudulent conveyance out of the way of an execution. There is a clearly recognized distinction between these two classes of creditors' bills. Under a bill in aid of an execution the creditor may proceed as soon as he obtains judgment and before execution has issued, while, on the other hand, before he may proceed under a creditor's bill proper, he must exhaust his remedy at law by obtaining judgment, execution and the return. of the. execution *nulla bona* or unsatisfied in whole or in part. (*Miller* v. *Davidson*, 3 Gilm. 518; *Dawson* v. *First Nat. Bank*, 228 Ill. 577.) The relief afforded by a bill in aid of an execution is of a different character from that afforded by a creditor's bill. Under the former the only relief granted is to set aside the encumbrances or conveyances therein spe-

cified as fraudulent, while under the latter any equitable
estate of the defendant may be reached.

The defendants defaulted, and a final decree as to the
matters averred in the bill was entered *pro confesso.* This
decree concludes appellant as to all matters of fact prop-
erly averred in the bill, but he may on this appeal contest
the sufficiency of the bill or assign as error that its aver-
ments do not justify the decree. (*Monarch Brewing Co.*
v. *Wolford,* 179 Ill. 252; *Ames* v. *Holmes,* 190 id. 561.)
No facts are properly in issue unless charged in the bill,
and no relief can be granted for matters not charged.
The averments of a bill and the decree must correspond.
It is fundamental that a party must stand or fall by the
case made by his bill. (*Rowan* v. *Bowles,* 21 Ill. 17; *Helm*
v. *Cantrell,* 59 id. 524; *Langlois* v. *People,* 212 id. 75;
*Stearns* v. *Glos,* 235 id. 290.) The only issues raised by
the averments of appellee's bill were whether the judg-
ment had been secured as charged and whether the deed
from Joseph McJohn to his father was without consid-
eration and fraudulent as to appellee, and the only relief
sought was to have the deed declared fraudulent and set
aside as to appellee, so that no obstacle would remain in
the way of a levy and sale, under its execution, of the
property described in the bill. There is neither averment
nor prayer in this bill which could raise an issue on the
rents, even if it be conceded that such issue could be joined
with the main object of the bill. The master found that
the facts alleged in the bill were true, that the conveyance
from Joseph McJohn to his father was fraudulent as to
appellee, and recommended that a decree be entered in ac-
cordance with the prayer of the bill and the master's find-
ings. To that relief, and no more, was appellee entitled
under the averments of its bill.

Circumstances might arise where it would become
proper and necessary for the chancellor to appoint a re-
ceiver, in cases of this kind, to preserve the property and

prevent waste. In no event, however, would the court have power, under a naked bill in aid of an execution, to appoint a receiver either of the personal property, or of choses in action of the debtor not involved, or of the real estate involved and the "rents, issues, income and profit thereof," as was done in this case. Counsel for the appellee and the chancellor evidently confused the purpose and scope of this bill with that of a creditor's bill filed after the return of an execution unsatisfied and seeking to reach any equitable estate of the defendant debtor. No showing was made here in support of the application for the appointment of a receiver. The appointment was made upon the mere motion of appellee, evidently upon the theory that it was warranted by the unverified averments of the bill, without notice to the defendants, and without requiring appellee to give bond, as provided by the statute. Had this been a proper case for the appointment of a receiver, it would be error to make the appointment without bond except for good cause shown and upon notice and full hearing. (Hurd's Stat. 1903, chap. 23, sec. 53.) A defendant is entitled to notice of the application, though in default, where the appointment of a receiver is merely incidental to the main object of the bill, unless complainant gives the required bond.

We are of the opinion that the appointment of the receiver was improvidently made, and that the court erred in overruling the motion of appellant to discharge the receiver and set aside the order of his appointment and in dismissing the petition of appellant praying for his discharge.

Appellee contends that if the appointment of the receiver was improper and the rents wrongfully collected, the fund is in court subject to the order of the chancellor, and should in equity be paid to it to apply on its judgment. In support of this position counsel rely upon the doctrine that a court of equity will take no step to save

harmless a party detected in a fraudulent combination to cheat. That doctrine is too well recognized to require comment, but it cannot be invoked to warrant the granting of relief not prayed for, or relief in respect to matters which have in nowise been put in issue. Appellee had every opportunity to avail itself speedily of the aid of the court in setting aside the conveyance complained of. Its judgment against McJohn was obtained on September 17, 1902, and this bill was filed October 6 following. The defendants being in default, there was nothing to prevent appellee securing a final decree and a levy upon the real estate in question during the lifetime of its execution.

Appellant filed objections to the final report of the receiver, in which, among other items, he objected to the expenses incurred by the receiver and to the claim for services and commissions on his part. This objection should have been sustained and the costs incurred by the appointment of the receiver and the fees and expenses of the receiver adjudged against complainant. *Burrows* v. *Merrifield,* 243 Ill. 362.

Various other questions have been raised, but we do not deem it necessary, in the view we take, to pass upon them.

The judgment of the Appellate Court and the decree of the superior court are affirmed except as to that part which orders and decrees the payment to appellee of the rents collected by the receiver during the lifetime of Edward McJohn, and as to that the judgment of the Appellate Court and the decree of the superior court are reversed and the cause is remanded to the superior court, with directions to enter a decree that the rent money collected during the lifetime of Edward McJohn be paid to appellant.

*Reversed in part and remanded, with directions.*